United States District Court
Southern District of Texas
**ENTERED**
September 23, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| ROBERTO PEREZ, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL NO. 2:15-CV-423 |
| § | |
| LORIE DAVIS, § | |
| § | |
| Respondent. § | |

## MEMORANDUM AND ORDER

In this habeas corpus proceeding under 28 U.S.C. § 2254, Petitioner Roberto Perez ("Perez") challenges his 25-year and 14-year concurrent sentences imposed after he pleaded guilty to possessing at least one, but not more than four, grams of cocaine, and less than one gram of heroin. *See* Indictment, D.E. 8-7 at 5–6; Judgment, *ibid.* at 66–67; Tex. Health & Safety Code Ann. § 481.115(a–(c) (Vernon 2009) (making possession of less than one gram of heroin a state jail felony and possession of 1–4 grams of cocaine a third-degree felony). Perez's habeas claims center on a hearing held November 30, 2012, on his motion to suppress and the state trial court's denial of that motion at the hearing's conclusion. *See* Tr. Hr'g held Nov. 30, 2012, D.E. 8-6 at 1–52. The Court has before it Respondent's motion for summary judgment, D.E. 11; Perez's response, D.E. 14; the Memorandum and Recommendations ("M&R") of the magistrate judge to whom this case was referred, D.E. 15, recommending that the Court grant the motion for summary judgment; and Perez's objections to the M&R, D.E. 18. After conducting a de novo review of the record, the parties' submissions, and the applicable law, the Court adopts the M&R in part, and dismisses all of Perez's claims.

### I.  Background

In addition to pleading guilty to the possession charges referenced above, Perez also pleaded to an enhancement paragraph, D.E. 8-7 at 5, alleging that he

was convicted of burglary of a habitation in 2000 and aggravated assault of a public servant in 2004. He therefore received the minimum punishment for a third felony conviction mandated by Tex. Pen. Code § 12.42(d) (Vernon Supp. 2011).

Perez's trial counsel, Gabriel Salais ("Salais"), filed a pretrial motion to suppress, alleging that Perez was arrested without probable cause on March 22, 2012. D.E. 8-7 at 16–17. At the suppression hearing, the state trial court heard testimony from Robstown, Texas, police officer Ernest Martinez ("Martinez") and Perez's father, Diociano Perez, Jr.. *See* Hr'g Tr., D.E. 8-6 at 1–42. The state trial court also admitted into evidence, and viewed, a recording made March 22, 2012, by a camera mounted on the dashboard of Martinez's vehicle ("Martinez video"). *See id*. at 12: 11. That video has been made part of the record in this proceeding, and this Court has reviewed it together with the transcript of Perez's suppression hearing. *See* D.E. 19 at 1 (ordering Respondent to file video); 22 (acknowledging filing of video).

Texas's Thirteenth Court of Appeals summarized Martinez's testimony this way:

> [O]n the afternoon of March 22, 2012, he observed "a vehicle parked on the wrong side of the road and what appeared to be a hand-to-hand transaction." Officer Martinez noted that this apparent transaction took place in an area of Robstown where police had "been dealing with a lot of narcotics." It appeared to the officer that two individuals standing outside the vehicle "were passing back and forth an item." Officer Martinez testified that, as soon as the two individuals saw that a police officer was present, they "tried to leave that area" and attempted to get back into the parked vehicle. Officer Martinez asked the men to stop. Officer Martinez stated that he recognized Perez as one of the individuals as a result of Perez's "prior experiences through the Robstown Police Department." The other individual was identified as Ricky Guzman.
>
> Officer Martinez testified that both Perez and Guzman were "acting totally different and extremely nervous" and that Perez "had his eyes wide open." The officer stated: "The way [Perez] looks at me and the way he immediately starts acting, I—that's not something normal that a normal citizen would have done."

According to Officer Martinez, as soon as Perez saw him, Perez "tried to wave down another vehicle. And it was a city vehicle, so I don't know why he was trying to wave them down." Because the officer did not feel safe, he conducted a pat-down. At that point, Perez informed Officer Martinez that he had a syringe in one of his pockets. Officer Martinez placed Perez under arrest for possession of drug paraphernalia. He then asked Perez to stay in place while he questioned Guzman. Police officer John Garcia arrived to assist and observed what appeared to be drugs "right next to [Perez's] feet."

The video shows Perez walking away from an unidentified male and towards Guzman's car as Officer Martinez approaches in his patrol unit. Guzman's car is parked in front of a residence on the left side of a residential street. Perez is about to open the passenger-side front door of Guzman's car when Officer Martinez pulls up and stops behind Guzman's car. At that point, Perez closes the car door and looks quizzically at the patrol unit. A white pickup truck then passes by, and Perez attempts to get the attention of the truck's driver by waving. Officer Martinez gets out of his unit, directs Perez to stand at the rear of Guzman's car, and proceeds to question Guzman, who is sitting in the driver's seat. When Perez is standing near the rear of Guzman's vehicle, he appears to attempt to kick at something on the ground. Later, Officer Garcia arrives and picks up a small baggie containing a white substance from the area where Perez was standing.

On cross-examination, Officer Martinez conceded that, although his police report described Perez emerging from Guzman's car before the "hand-to-hand transaction" took place, the video recording did not show that. Officer Martinez explained that the patrol unit's video camera "is not going to capture exactly what I could see from the window." Officer Martinez further conceded that there is "[n]othing illegal" about conducting a "hand-to-hand transaction"; rather, "it's just suspicious, when that whole area is known for drug activity and there is a car parked on the side [of the road]." He agreed with defense counsel that the "hand-to-hand transaction" he observed might have been a handshake. He further conceded that Perez's father works for the City of Robstown, although he did not remember seeing Perez's father driving the "city vehicle" that Perez tried to "wave down." Officer Martinez agreed with defense counsel that Perez never made any "furtive movements."

*Perez v. State*, No. 13–13–00017–CR, 2013 WL 6175328, at *1–2 (Tex. App.-Corpus Christi Nov. 21, 2013) (mem. op., not designated for publication)

(quoting transcript). The foregoing quote reasonably characterizes the Martinez video.[1]

Additionally, the first 22 seconds of the Martinez video depict a view of the street as Martinez drives. He makes a right turn, approaches another intersection, and begins turning left at 00:20. Three seconds later, the vehicle parked on the left side of the street, Perez, and another individual wearing what appears to be a black shirt, Fabian Amaya ("Amaya"), come into view as Martinez completes the turn. When they first appear in the Martinez video at 00:23, Perez and Amaya are standing near the driver's side of the parked vehicle, and the video shows a movement that could reasonably be found to be a hand-to-hand exchange.

The state trial court denied Perez's motion to suppress. D.E. 8-6 at 50:19-51:24.

> When I first saw the video, and I guess I've seen the same video now about six times, my – I could not see what the officer was testifying to. However, when you consider that the video or camera is in the middle of the car and the car is turning, that camera is facing this way, there is no question he could be observing activity or movement here before the camera comes around the car and is situated straight on that street. There is no question, and I have read many cases, that it's the totalitariness of the situation that the officer is allowed to rely on. If we look at here what we see him is leaving the illegally parked vehicle. The officer has the right to investigate with regards to the illegally parked vehicle, but when he sees is an illegally parked vehicle, he sees an individual leaving that vehicle, coming across meeting something, he sees something, a hand-to-hand transaction, that allows for a suspicion to develop. He goes back to the car, he is dealing with, now, nervousness, bug eyes, and then the sweating. He pats him down and he admits to a dangerous drug, that's when he takes him into custody. I believe based upon the – what I understand to be the totality of the situation or reasonable suspicion, it's not like we could isolate one individual fact, the officer has to rely on everything that he's seen and it's happening, boom, boom, boom. And so I am going to deny your motion to suppress. I do not find

---

[1] The video filed by Respondent in this proceeding also includes what appears to be backward-facing video from the same camera recorded at or near the same time as the front-facing video. The transcript of Perez's suppression hearing makes no mention of the backward-facing footage, and it is unclear whether the state trial court made any findings about or based on that footage.

it to have – him to have been illegally detained. As a result I don't have to get to the issue of what he dropped, as to whether or not it can be considered.

*Id.*

Perez appealed, and Texas's Thirteenth Court of Appeals affirmed. *Perez v. State*, No. 13–13–00017–CR, 2013 WL 6175328 (Tex. App.-Corpus Christi Nov. 21, 2013) (mem. op.). Through counsel, Perez argued on appeal that Martinez lacked reasonable suspicion to conduct an investigative stop. The state appellate court held that the evidence viewed in the light most favorable to the trial court supported the conclusion that Martinez had reasonable suspicion for the investigative stop. *Id.* at *3–5. The Court of Appeals distinguished three cases cited by Perez, stating that "Martinez testified as to additional 'articulable facts' that would support reasonable suspicion in this case." Id. at *4. Specifically, "Martinez testified that Perez emerged from a vehicle that was parked on the wrong side of the road. The officer could have logically inferred from this fact alone that Perez and [the driver] were involved in criminal activity; i.e., violating traffic laws by driving on the wrong side of the road."[2] *Id.* (citing Tex. Transp. Code Ann. § 545.051(a) (West 2011)) (other citations omitted).

Perez filed a petition for a writ of habeas corpus with the Texas Court of Criminal Appeals ("TCCA"). D.E. 8-2 at 1–11. He alleged, among other things, that his trial counsel rendered ineffective assistance by failing to interview Amaya. Perez attached Amaya's affidavit to his petition. D.E. 8-11 at 26. Amaya's affidavit

---

[2] The cited statute provides that, with certain exceptions, "An operator on a roadway of sufficient width shall drive on the right half of the roadway." Tex. Transp. Code Ann. § 545.051(a) (West 2016). As used here, the term "operator" means "a person who drives or has physical control of a vehicle." *Id.* As explained in Part III, *infra*, this Court is precluded from addressing the merits of Perez's Fourth Amendment claim, and so the Court does not reach when, and in what circumstances, a traffic stop for driving on the wrong side of the roadway justifies an investigation of a passenger who does not meet the definition of an "operator." *See generally Davis v. State*, No. 08-15-00033, 2016 WL 4126020, at *3 (Tex. App.-El Paso Aug. 3, 2016) (mem. op., not designated for publication) (reading *Arizona v. Jonson*, 555 U.S. 323, 327, 333 (2009) as holding that "following a lawful roadside stop, the police may lawfully detain both the driver and all passengers pending inquiry into a vehicular violation," and that the seizure of the driver and the passengers is reasonable and ordinarily remains reasonable for the duration of the stop).

states that no attorney representing Perez contacted him, that he was available to testify at Perez's suppression hearing, and that if interviewed, he would have told Salais that he was willing to testify to the following facts:

> On March 22, 2012, I was standing on the sidewalk on Ave C near Matiana Ortiz in Robstown having a conversation with Roberto Perez when a person I know by the name of Ricky Lee Guzman pulled up in his car near where we were standing and parked. Almost immediately Robstown police officer Ernest Martinez turned the corner onto our location, jumped out of his vehicle, drew his gun and told us not to move. He then holstered his gun prior to coming into view of his unit's dash camera and came over to where we were.
>
> At that time he detained Roberto Perez and Ricky Lee Guzman. I was allowed to leave the area.
>
> At no time was Roberto Perez inside of Ricky Lee Guzman's vehicle prior to Officer Martinez's arrival, nor after his arrival.

Amaya Aff., D.E. 8-11 at 26.

The state trial court prepared an initial set of proposed findings of fact and conclusions of law and transmitted them to the TCCA with a recommendation that Perez's petition be denied. D.E. 8-11 at 76–79. The TCCA directed the state trial court to make supplemental findings of fact, stating that Amaya's testimony "could have been used to challenge the credibility of the detaining officer, whose testimony the trial court relied on in denying [Perez]'s motion to suppress." Ex parte *Perez*, No. WR–83,342–01, 2015 WL 3899364, at *1 (Tex. Crim. App. June 24, 2015) (per curiam, not designated for publication) (citations omitted) (determining that Perez alleged facts that, "if true, might entitle him to relief").

Salais filed an affidavit in the state trial court. D.E. 8-10 at 5. The affidavit states that police reports showed that Perez admitted that Guzman gave Perez the drugs found at the scene as the police approached. *Id.* (also stating that Perez told Salais the same thing). Salais further states that he "did not want to get into how Mr. Perez obtained the drugs from [Guzman] before the police contact," so he "chose

not to call [Amaya] because [he] felt that the best strategy was introducing the video evidence and arguing Mr. Perez' distance from the vehicle." *Id*.

The state trial court made the following supplemental findings without holding a hearing:

> (3) counsel investigated, and considered the possibility of calling, the Applicant's proposed witness Fabian Amaya; (4) counsel made a strategic choice not to call this witness because it would not have benefitted the defense and instead chose to pursue a different trial strategy; (5) counsel's strategy had a plausible basis and his conscious and informed decision not to call Amaya was the result of reasonable professional judgment.

*Ibid*. at 4. On September 16, 2015, the TCCA denied Perez's petition without written order "based on findings of trial court." D.E. 8-8 at 1.

## II. Procedural Standards

The Court reviews objected-to portions of a magistrate judge's proposed findings and recommendations de novo. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3). The Fifth Circuit has observed that district courts often review the entire record de novo when a pro se litigant objects to portions of a magistrate judge's proposed findings, conclusions, and recommendations. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). This most often occurs because the objections do not make clear "which [proposed findings and conclusions] are challenged, or on what basis." *Id*. When an objection is properly raised, "the Court will examine the entire record, and will make an independent assessment of the law." *Bilotto v. Allied Prop. & Cas. Ins. Co.*, 79 F. Supp. 3d 660, 663 (W.D. Tex. 2015); *Gallegos v. Equity Title Co. of Am., Inc.*, 484 F. Supp. 2d 589, 591 (W.D. Tex. 2007). Nevertheless, "[f]rivolous, conclusive or general objections need not be considered by the district court." *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d

404, 410 n. 8 (5th Cir. 1982) (en banc)); *Bilotto*, 79 F. Supp. 3d at 663 (quotation omitted); *Gallegos*, 484 F. Supp. 2d at 591 (quotation omitted).

Perez does not object to the portion of the M&R setting forth the general summary judgment standard applicable to a habeas petition under 28 U.S.C. § 2254. *See* D.E. 15 at 3–4. The Court incorporates that standard as if fully set forth herein.

### III. Fourth Amendment Claim

The M&R proposes that this Court conclude that Perez's Fourth Amendment claim is nonreviewable under the rule of *Stone v. Powell*, 428 U.S. 465 (1976) because Perez received a full and fair opportunity to litigate his motion to suppress before the state trial and appellate courts. D.E. 15 at 7, 9. The Supreme Court held in *Stone* "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976) (footnote omitted). The Fifth Circuit has held that the "*Stone* bar applies even where the petitioner did not avail himself of the litigating opportunity provided by the state courts," for "'[i]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone*." *Register v. Thaler*, 681 F.3d 623, 629 (5th Cir. 2012) (quoting (*Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980)) (alteration in original). The *Stone* rule "applies to all claims arising under the Fourth Amendment," including arrests and search-and-seizure cases. *Hughes v. Dretke*, 412 F.3d 582, 596 (5th Cir. 2005) (collective cases).

Perez argues in his objections that he did not receive a fair hearing before the state courts because the Martinez video objectively undermines the state trial

court's factual findings. *See* D.E. 18 at 5. In this regard, he observes that the Martinez video "does not depict Petitioner exiting the illegally parked vehicle." Objs. 5.

The state trial court did not find, as Perez maintains, that the Martinez video shows him walking from the passenger's side of the car. Objs. 5, D.E. 18. Perez quotes the state trial court's statement made when it ruled on his motion to suppress that "what we see him is leaving the illegally parked vehicle." D.E. 8-6 at 51:5. The previous sentence of the transcript contextualizes the state trial court's statement about "[w]hat we see." *Id.* In context, the statement refers to the state trial court's findings of the facts that comprised the totality of the "situation… that the officer has to rely on." *Id.* at 51:16-18.

The record shows that the state trial and appellate courts considered Martinez's testimony in addition to the video. Martinez conceded at the suppression hearing that the video does not show Perez leaving the passenger-side area of the car. *See* Tr., D.E. 8-6 at 23: 23:20 (agreeing with Salais that "you don't see anybody walking from the right-hand side of the passenger and walk to the sidewalk . . . [o]n this video."). Martinez also testified that the camera that recorded the video was mounted at the center of his dashboard and did not face the driver's side. Tr. at 22:20-21, D.E. 8-6. He further testified that he was looking out his driver's side window, and he "could see . . . a lot further than the camera." *Id.* at 22:24-25; *accord.* Tr. at 32:10-19, D.E. 8-6. In response to further questioning from Salais, Martinez again told the state trial court that he had "a whole different perspective from that video and from what I saw the camera is not going to capture what I can see from the window." Hr'g Tr. at 25:8-10, D.E. 8-6. Thus, the state trial and appellate courts had before them Martinez's testimony that he could see Perez and the vehicle before either can be seen on the video introduced into evidence.

The Martinez video does not objectively contradict the state trial or appellate court's decisions. Throughout the video, the camera apparently remains at a single,

fixed point that is consistent with being mounted at or near the center of Martinez's dashboard. The left turn in the Martinez video apparently begins at 00:20, and Martinez comes into view three seconds later. Nothing in the video objectively rules out the reasonable possibility that Martinez could see Perez and the car by looking through his driver's side window at an earlier time—sufficiently earlier to observe Perez walking around the car in a manner consistent with leaving the vicinity of the front, passenger-side door.

Therefore, the record of Perez's suppression hearing and the video admitted into evidence at that hearing fairly support the state trial and appellate courts' rulings on Perez's motion to suppress, precluding this Court from revisiting the application of Fourth Amendment principles to the record then before those courts.[3] *See Hughes v. Dretke*, 412 F.3d 582, 596 (5th Cir. 2005) (holding petitioner had full and fair opportunity to challenge search of car, his arrest, and seizure of evidence where "the Texas Court of Criminal Appeals reviewed the record and determined that the warrantless arrest of Petitioner was justified because the 'police had satisfactory proof to believe that the occupants of the car they were pursuing had just committed a double murder/robbery and that their escape was imminent'" (quotation omitted)); *Wicker v. McCotter*, 783 F.2d 487, 497–98 (5th Cir. 1986) (reviewing record before state trial court and holding Fourth Amendment claim barred under *Stone* because "[w]e cannot say that the state courts' determination that the state proved by a preponderance of the evidence that the body would have inevitably been discovered is without fair support in the record" (footnote omitted)).; *Balentine v. Quarterman*, 324 F. Appx. 304, 306–06 (5th Cir. 2009) (per curiam,

---

[3] When applying *Stone v. Powell*, the Fifth Circuit has analyzed whether evidence not before a state court at the suppression hearing was of such a character as to call the reliability of the state court's determination of the petitioner's federal claims into question. *See Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (applying *Stone v. Powell* bar and stating that the petitioner had "not alleged any 'undeveloped evidence sufficient to call into question the 'reliability' of the state court's determination of [his] federal claims'") (quoting *Streetman v. Lynaugh*, 812 F.2d 950, 958 (5th Cir. 1987)) (alterations in original)). Perez does not contend that Amaya's affidavit meets that standard, and he has therefore failed to carry his burden. *See* Objs. 5 (arguing only that the video rendered proceedings objectively unfair).

unpublished) (holding *Stone* precluded consideration of Fourth Amendment claim where petitioner filed pretrial motion to suppress, trial court held a hearing, petitioner objected to use of evidence at trial, and raised Fourth Amendment claims on direct appeal). Indeed, Salais presented the substance of the factual argument Perez advances here to the state trial court. In his closing argument at the suppression hearing, Salais urged the state trial court not to credit Martinez's testimony based on the timeline of events depicted in the video. *See* Tr. At 47:3-9 (summarizing Martinez's testimony and concluding that "[t]he seconds don't add up" in light of the Martinez video). After weighing the video and Martinez's testimony, the state trial court found that Martinez "could be observing activity or movement here before the camera comes around and [Martinez's] car is situated straight on that street." Tr. at 50:25–51:1, D.E. 8-6. As already discussed, the video does not objectively contradict this conclusion. Moreover, the video was played and replayed while Martinez was questioned, giving the state trial court an opportunity to observe his demeanor and consider his tone as he testified about what he saw and heard before the time at which Perez can first be seen on the video. *See, e.g.*, Tr. at 14:1–15:25, 23:2–30:22, D.E. 8-6 (playing and replaying the video while hearing testimony). While Salais repeatedly played the video, Martinez testified about the time at which he could see Perez. *See id.* at 24:9. The record includes no references to video time indices, however, and the state trial court observed the moment coinciding with Martinez's testimony that he could see Perez at "this point." *Id.* at 24:22-23; *see id.* at 24:24–25:22 (following up on testimony). As such, the record shows that Perez was afforded a full and fair opportunity to contest the veracity of Martinez's testimony at the suppression hearing, and provided the state trial court with an adequate basis for finding him credible. *See Penry v. Lynaugh*, 832 F.2d 915, 918 (5th Cir. 1987) (holding *Stone* precluded consideration of claim that police officer who testified at suppression hearing lied because "independent evaluation of the state court record" showed that petitioner had full and fair "opportunity to contest the introduction of incriminating evidence" (quoting *Billiot v. Maggio*, 694 F.2d 98, 100 (5th Cir. 1982)). This Court need not, and does not,

reach the substance of Perez's arguments that the state courts erred in their application of Fourth Amendment principles. *See Balentine*, 324 F. App'x at 307 ("If the term 'fair hearing' means that the state court must correctly apply federal constitutional law, *Stone* becomes a nullity.") (quoting *Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978)).

## IV. Ineffective Assistance of Counsel

Perez objects to the M&R's proposed resolution of two of his claims that his attorney rendered ineffective assistance at the suppression hearing. No party objects to the M&R's recitation of the standard for reviewing the decision of a state court under the Antiterrorism and Effective Death Penalty Act of 1996, as amended, *see* 28 U.S.C. § 2254(d)–(e), and the Court adopts that recitation as if fully set forth herein. *See* D.E. 15 at 4–5. This Court also adopts the M&R's articulation of the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984) in light of the deference this Court owes the state court under AEDPA. *See id.* at 10–12. In brief, because "[b]oth the *Strickland* standard and the AEDPA standard are 'highly deferential,' . . . "when the two apply in tandem, review is 'doubly' so." *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). *Strickland* requires Perez to show both: (1) "that trial counsel's representation was deficient—that is, it 'fell below an objective standard of reasonableness;'" *id.* at 389 (quoting *Strickland*, 466 U.S. at 688); and (2) prejudice, that is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* (quoting *Strickland*, 466 U.S. at 694).

### A. Command of Controlling Law

Based on the closing arguments of counsel at his suppression hearing, Perez argues that his attorney did not have command of the controlling law. Near the end of his closing, Salais argued that this case involved "almost a pretextual stop" because Martinez testified that he recognized Perez. D.E. 8-6 at 48:9-10. The

prosecutor, for his part, argued in his closing that some or all of the cases on which Perez relied were distinguishable because they were decided before *Woods v. State*, 956 S.W.2d 33 (1997) (en banc). *See* D.E. 8-6 at 48–49.

Perez's contentions implicate two Fourth Amendment doctrines. First, regarding pretext for a stop, "[w]ith the presence of an objectively valid reason for stopping a car such as a traffic violation, the constitutional reasonableness of traffic stops does not depend on the actual motivations of the individual officer involved." *State v. Fudge*, 42 S.W.3d 226, 234 (Tex. App.-Austin 2001) (citing *Wren v. United States*, 517 U.S. 806, 813 (1996)). Despite criticism of this doctrine, "this so-called 'pretext' stop—when based on probable cause—is now well established in the law." *Id.* (citing *Wren*, 517 U.S. at 818–19). Second, *Woods* adopted a totality-of-the-circumstances test to evaluate the legality of an investigative stop based on reasonable suspicion and overruled prior Texas cases applying a standard that asked whether purportedly suspicious behavior was "as consistent with innocent activity as with criminal activity." *Woods*, 956 S.W.2d at 338–39; *see id.* at 336–37 (discussing origin and use of this test in Texas jurisprudence).

As discussed in the M&R, the TCCA adopted the following finding of the state trial court' on Perez's claim that Salais did not have command of the controlling law:

> [Petitioner] claims that counsel should have objected, at the conclusion of the suppression hearing, to the trial court's factual finding that in the video of the stop he was shown leaving the vehicle. The Court's determination that [Petitioner] was leaving the vehicle was based on the officer's testimony as well as reasonable inferences from the video evidence. It was well within the Court's discretion to make that determination based on what it could see in the video combined with the officer's testimony. The Court's determination of this historical fact is afforded great deference and [Petitioner] has shown no evidence to overcome that finding. Thus, he has failed to show that the trial court would have abused its discretion in overruling his proffered objection.

D.E. 15 at 17-18.

The transcript of Perez's suppression hearing shows that Salais challenged each of the facts Martinez articulated to support the stop and Perez's eventual arrest—both separately and cumulatively. D.E. 15 at 16 (citing cross examination and closing argument in Tr. at 19–39, 45–48). As already explained, the record includes evidence that the state trial court applied the proper totality-of-the-circumstances test to evaluate reasonable suspicion. *See* Tr. At 50:17–51:4; *See also*, *e.g.*, *Gonzalez v. Huerta*, 826 F.3d 854, 856 (5th Cir. 2016) ("Reasonable suspicion [for an investigative stop] must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion." (quoting *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994))). The state trial court's oral ruling on Perez's motion to suppress does not mention pretext. *See* D.E. 8-6 at 50:19–51:24. Finally, the state court of appeals distinguished the cases cited by Perez on their facts rather than by relying on *Woods* or a legal distinction concerning pretext stops, and its reliance on the Texas Transportation Code without mentioning Martinez's subjective intent accords with the applicable Fourth Amendment standard. *See Perez, supra*, 2013 WL 6175328, at *4–5 (stating that "[t]he instant case is similar but not directly analogous to *Comer* and *Hawkins*," and discussing the facts of those cases).

Accordingly, the Court overrules Perez's objection to the dismissal of his claim that his attorney did not have command of controlling law. The state court's resolution of this claim involved neither an unreasonable application of clearly established federal law nor an unreasonable determination of facts in light of the evidence.

**B. Failure to Investigate.**

Perez maintains that his trial counsel rendered ineffective assistance by failing completely to contact Amaya and assess his credibility as a possible witness. See Objs. 1. He relies on *Anderson V. Jonson*, 338 F.3d 382 (5th Cir. 2003) and *Bryant v. Scott*, 28 F.3d 1141 (5th Cir. 1994), in which the Fifth Circuit affirmed

grants of habeas relief under *Strickland* to petitioners whose counsel failed to interview witnesses.

"It is beyond cavil that 'an attorney must engage in a reasonable amount of pretrial investigation and[,] at a minimum, interview potential witnesses and make an independent investigation of the facts and circumstances in the case.'" *Harrison v. Quarterman*, 496 F.3d 419, 425 (5th Cir. 2007) (quoting *Bryant*, 28 F.3d at 1415). The Supreme Court in *Strickland* ruled that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 191. When an uninterviewed witness's proposed testimony overlaps to some degree with the testimony presented to the fact finder, "proposed testimony cannot be dismissed as cumulative [where] the difference between" the proposed testimony and that heard by the fact finder "goes to the heart" of the issues at the hearing. *Harrison*, 496 F.3d at 426 (citing *Washington v. Smith*, 219 F.3d 620, 633-34 (7th Cir. 2000)) (other citation omitted) (concluding proposed testimony went to the heart of consent defense).

The state trial court found, based on Salais's affidavit, that he made an informed, strategic decision not to pursue calling Amaya as a witness. D.E. 8-10 at 4. Salais states in his affidavit that he relied on police reports and Perez's statements to him to decide on his strategy of showing the video at the suppression hearing and arguing that the timeline it depicts was incompatible with Martinez's then-expected testimony and police report. *See id.* Salais observes in his affidavit that Amaya's affidavit does not mention how Perez received the drugs found at the scene, but Salais states that his strategy was to attack the legality of the stop ab initio, i.e., before the contraband was found. *See* D.E. 8-11 at 5. Salais does not mention contacting Amaya in his affidavit, however, and nothing in the record suggests that Salais did more than presume what Amaya's testimony would be based on consultations with Perez and a review of police reports. *See id.*

"[I]f counsel does not speak to a witness, then counsel 'is ill-equipped to assess his credibility or persuasiveness as a witness.'" *Harrison*, 496 F.3d at 426 (quoting *Anderson*, 338 F.3d at 392 and citing *Griffin v. Warden*, 970 F.2d 1355, 1358 (4th Cir. 1992)).

Perez's analysis takes as a given that Amaya would have testified after being fully informed of the risks, however, but a contrary conclusion is implicit in the supplemental findings adopted by the TCCA.[4] The Fifth Amendment right not to be compelled to be a witness against oneself, i.e., the privilege against self-incrimination, "applies not just in criminal proceedings, but also allows a witness to refuse to answer questions in 'any other proceeding, civil or criminal formal or informal, investigatory or adjudicatory, where the answers might incriminate him in future criminal proceedings.'" *United States v. Carriles*, 832 F. Supp. 2d 699, 701–02 (W.D. Tex. 2010)) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973)). In his affidavit, Salais stated that he made an informed decision not to call Amaya because police reports report in the case showed, and Perez confirmed to him, that Guzman handed Perez the drugs later found at the scene as the police approached. See Salais Aff. 1, D.E. 8-10 at 5. The Martinez video depicts an interaction can reasonably be viewed as a hand-to-hand transaction between Perez and Amaya at approximately time index 00:25. Amaya's affidavit states that he was available to testify at the suppression hearing, but it does not address whether he would have been willing to do so had he been fully informed of his Fifth Amendment rights and the risks of testifying. See D.E. 8-10 at 5. Accordingly, The record reasonably supports the state court's inference that Fifth Amendment concerns animated Salais's reasonable, strategic choice not to pursue

---

[4] Because the Court relies only on the state trial court's supplemental findings on this ineffective-assistance claim, D.E. 8-10 at 4, it need not determine what, if any, effect the TCCA's order for supplemental findings has on AEDPA deference to the state trial court's first set of findings and conclusions. See, e.g., *Burton v. Thaler*, 862 F. Supp. 2d 639, 650–52 (S.D. Tex. 2012) (citing *Micheaux v. Collins*, 944 F.2d 231, 232 (5th Cir.1991)) (other citations omitted) (reviewing history of remand for supplemental findings to conclude that the CCA, "in effect, rejected the factual findings [first recommended by the state trial court] sub silentio").

calling Amaya as a witness, especially in view of the doubly deferential AEDPA standard. *Cf. Gonzalez v. Quarterman*, 2006 WL 3151357, , at *5 N.D. Tex. (Nov. 3, 2006) (finding no constitutional violation under Sixth Amendment where witness was not called at trial but "all present agreed that [the witness] could be prosecuted for having provided false information" and so would have invoked her Fifth Amendment privilege as counsel advised.

## V. Conclusion

For the foregoing reasons, the Court adopts the M&R in part as set forth herein and **GRANTS** Respondent's Motion for Summary Judgment, D.E. 11. The Court **DENIES** Perez a Certificate of Appealability. The Court **DIRECTS** The Clerk to close this case after entering the accompanying judgment.

It is so ORDERED.

SIGNED this 23rd day of September, 2016.

_____
Hilda Tagle
Senior United States District Judge